Thank you, Your Honor. May it please the Court, my name is Bradley Schleyer, and I represent the appellants, Ms. Dunn and Ms. Brown, as well as a group of individuals who elected to take early retirement from their jobs at the Miami Unified School District and were promised that the district would continue to furnish medical benefits to the employees through the minimum date they were eligible for Medicare, and one of them, I think, says through age 7. And during their employment and for the first three years, the district provided medical insurance and furnished medical insurance at no cost. I mean, after their retirement. After they retired. They had been retired for three years already. Right. Well, just could you clarify one factual point for me just to make sure? Sure. Before they elected to take the early retirement, what was the district paying for their medical and dental benefits? They paid for it all. They paid for it completely? Yes. It was at no cost to the employees. And so at this point in July, I think it started in July of 2009, the district decided that it would now charge $100 a month for health insurance benefits. And that's what led to why we're here today. We had filed a complaint that the State law actually, as well as three counts under the contract clause, the taking clause, as well as 1983, lack of due process. Your contract – the district court didn't decide the contract claim, is that right? No, it didn't, but the – but we're – It declined to assert supplemental jurisdiction over it. Is that what happened? Yes, we did. And then we now have a case that is pending and sort of been sitting in abeyance waiting for – waiting for this to be decided before we decide whether, you know, if you reverse, we're back in district court. If not, then I'm located in the Globe, Miami, or the – it's the – which is the Gila County Superior Court at that point. Okay. And so we've led to this action, and, you know, and really despite the plain language of the agreement, despite the understandings of the parties, despite the course of conduct that had been engaged in by the district as well as our clients, the district court judge agreed with the district's interpretation that the word furnish meant that they could continue to furnish now with a fee. I'm not so sure that on its face that that term is clear and means that this means the district will give medical benefits without contribution from the beneficiaries. I mean, I can see that maybe with some plural evidence, and you say you have evidence that, look, even before they were retired, everything was paid for, for the first three years everything was paid for, maybe you win, but it's not clear to me on the face of it that furnish means without any contribution from the beneficiaries. Well, Your Honor, that's why we cited that the all-day case and the recent decision by the Ninth Circuit. But it was – in that case, as I read the record in that case, it was very specific, and there was a condition in that case that said without any contribution from the beneficiaries. That's absent here. You don't have that language in the agreement here. I agree, Your Honor, but if you look at the all-day decision and you look at what the focus was, they focused, again, on that term provide. And if you – I think they narrowly decided, they said, let's look at that term provide and what that means in normal context. Wasn't there other – it was a collective bargaining agreement, and there were other provisions that made it very clear that there was no contribution requirement on the part of the beneficiaries. That's absent here. I agree with you, Your Honor, but I think when you look at what they focused on in making that determination, they looked specifically at that word provide, and they said if you don't give it the meaning that it has, then the whole promise is illusory then. And I like to work with examples, because I think that's how I work with it. If I – Your Honor, if I invited you to come to the Arizona State Bar Convention and said we're going to furnish you meals, flight, hotel, and we do it that way for 3 years, and then after that 3-year period, I call you up and say, you know, we're going to continue to furnish that benefit to you of flights and whatever, and then if you get a bill in the mail from me for that, I have a feeling that the common sense meaning of the word furnish, you're going to – I wouldn't want to be the person on the other end of the phone call, to be honest. Look, I agree with your example, but that kind of begs the question here. It doesn't flow from furnish. It flows from the parole evidence that you've cited, the fact that for 3 years, you've used the word furnish and it's been all-inclusive. And only then do I say, well, furnish means what it's always meant. But it requires a resort to some kind of outside evidence. It's not clear on the face of the word furnish. That's the problem that I'm having with this. You know, it's not necessarily fatal to your claims. No. I agree, Your Honor. I think that, you know, and again, we go on next to the parole evidence, and I think the parole evidence supports our position that this was no cost. But, you know, I still focus on the all-day decision. I think that that, when you look at what their discussion is of that term provide, and they don't talk about parole evidence when they're talking about that at that point in the decision. They focus just on the definition itself. And they don't go, hey, but we look at the parole evidence. They don't say that. They say, the word provide means this. And I think the definitions of provide and furnish are almost identical. Kennedy. Can I ask you this? What do you define the difference between a strict contract dispute and then something that goes to the level of being a constitutional violation of taking a property without process? I mean, what distinguishes those things? Is every contract that the government entity enters into, does that create a property interest? No, I don't, Your Honor. So where's the dividing line? Well, I think this is a little bit different. I think if you look at the case law that we cited, one of the issues is that those cases where they said, you know, this is on the contract side and not on the, you know, rises to the level of due process, usually it's a single transaction. This is an ongoing – I don't want to use scheme, but it's an ongoing program that they have. If you look at the Southern California gas case, the Cayetano case, I may be saying it wrong, Cayetano case, those were ongoing issues that were going on that sort of arose to that level where it became beyond just a contract. And it was a benefit, and it was something, you know, in that level where it's just not that singular transaction that we saw in some of the case law citing by Capolese in the case. Don't those cases require a lot more certainty in what the property interest is? Well, I think that, you know, I think that the case that we have here with the property interest is a benefit that was provided to the State. Well, it's only if you interpret furnish the way you do. I agree, Your Honor. And I think if we get to the point where you say, look, this is just some dispute case. It seems to me that if we have to use parole evidence to determine the property interest, it may not rise to the level of a property interest. I agree. I don't disagree with you, Your Honor, on that. I think that you're, you know, that may be true in that situation. But again, I go back to where my initial position is, that I think this is fairly clear when somebody says the term furnish in this case. And again, I'm back to that definition and what that means in, you know, civil trial. I mean, it looks like, you know, it looks like you have pretty good parole evidence. Oh, no, and I do, Your Honor. Before they take this benefit, they're getting medical and dental benefits at no cost, and then three years, for three years after, they're getting medical and dental. Yeah. No, and I agree, Your Honor. I think they've been getting it. There will be discussions in the parole evidence that we mentioned about the fact that one of the reasons they jumped on this at the time was because they were told there were going to be changes in this. And there were things like that, that, you know, the district court judge sort of focused on, well, it just seems like the definition is this with the ability to, you know, to charge. I just understood him to be saying that it's not certain enough. Oh. For purposes of constitutional analysis. And that's really all that's in front of us. Well, oh, I'm sorry. No, Your Honor, I believe, you know, it's our position that it is certain enough. That, again, based on the definition and without even getting to the parole evidence, I don't think we need to even get there. I think this is an agreement. It's no different, you know, I look at the franchise agreement that they had in Southern California Gas. I mean, it's a singular agreement like this, and I just believe it's a singular agreement. Let's assume for a second that you're correct. Go ahead, Mr. Walsh. When Judge Pins is done, I'll go ahead and interject one question. Please go ahead. For me, the key problem in my mind is whether this all gets to the constitutional level. And I'm sure there's a substantial contract claim. But my question is what it's sort of like the question Judge Burns was raising at the outset. What distinguishes this case to make it constitutional? From all every contract case. And I understood your answer to that. But I'll just put on the table. I don't think from my perspective, the word furnish is absolutely clear that it would mean furnish at no cost because I look at all the millions of people in our country who are trying to get health care plans furnished to them through the Affordable Care Act. And they're all going to pay for whatever it is they get. So I don't think furnish does it alone. And my question in my mind is, if you have to introduce a lot of evidence that means furnish is absolutely free, does that put it in the contract realm rather than the due process realm? Well, Your Honor, again, you know, I understand what you're asking. And my belief is that, number one, I think it's clear. I mean, I understand what you're saying about the Affordable Care Act. And I would say that's they have to offer that or it has to be offered. It has to be available to people versus furnish. So I see it's a little, a little different from that. But in terms of the due process, what you're asking for, again, this is a, you know, I think what you're asking is, if we can't define the parameters of the right clearly, then it drops out of the due process realm and it drops out of the federal, the constitutional realm, for lack of a better term, and it drops out of there. And, you know, again, it's our position that this is fairly clear, that it is something that the parameters of this right and this contract have been defined. And it's our position going forward that it does, it is entitled to the constitutional protection. I'd like to reserve that. Thank you. Thank you, counsel. May it please the Court. My name is Scott Curry. I represent the Miami Unified School District in this case from Miami, Arizona. Let's talk about furnish. I have to disagree with plaintiff's counsel on exactly what Allday versus Raytheon talks about, considers in the word provide, which is a different, a different word. Allday really is a different case than the case we have. Allday, as you know, dealt with very different issues. There was the ERISA issue, there was a labor issue, the contracts were very complicated. The Court specifically said that the contracts specifically allowed for no premiums. And then finally, the word that the Court in Allday boiled down to and was ended up talking about was the word provide rather than the word furnish. Now, I know those words are similar, but I point that out because, again, it's just one more way of showing that our case is very different. Our contract in this case is a retirement incentive contract. The contract basically is, what, three sentences long, I think. And the word, what the court found, what the district court found, contrary to what the district court found, was that the district court did not find that the district had, the school district had the right to amend the agreement unilaterally. That's not what the court found. The court found, and I believe it was on page 8 of the district court's opinion, that the contract was silent as to who was responsible for paying the premium. If the contract is silent on that issue, then, of course, there's no impairment of contract rights, there's no due process issues, and there's no taking. So the Court did not find that the word furnish means furnish for a fee, as plaintiffs imply. The Court found the contract doesn't cover that. The contract doesn't cover who pays for the premium. Now, plaintiffs, understandably, don't like that interpretation. And so what they're saying is, you know what, district court, you're wrong. The contract did cover who's supposed to pay for the premium, but you have to interpret furnish to mean furnish for free. And the district court, in our opinion, rightly failed to do that, did not want to do that, because, again, the court would be adding language to the contract. The court simply found that there was no language in the contract that went to the issue of who was responsible for paying the premium. Is it your position that there's no ambiguity even in the contract about that? There is no ambiguity in the contract about that, Your Honor. So it's your position that this is all over and done? This is all over and done. And here's one thing that we're forgetting here, and I think you have to look at the type of contract we're talking about. This isn't a retirement plan contract, as in Alde, and oftentimes the type of contract you're dealing with in this kind of situation, this is a retirement incentive contract. This is a contract where the district says to teachers, you know what, we'd like you to retire early, and we're going to give you something to retire early. What they gave them was a cat, and this is in the contract, it's in the record. We're going to give you a cash amount, we're going to give you a cash settlement. There are certain rights that you have as far as being a substitute teacher. And the third thing is we're going to furnish insurance. But actually it says we're going to continue to furnish. We're going to continue to furnish. Now, that's, Your Honor, I have to admit that is a bit troubling. Yeah. I don't want to – I'll let you argue that in front of the – in front of the superior court. Okay. Okay. But, you know – And I won't say any more. All right. All right. Do you want me to comment on that? No, it's not necessary. Okay. You know, you've got to remember, if the plaintiffs decided not to take advantage of the retirement incentive contract and just retired, they wouldn't have any right to health insurance from the district. But it was, as you just pointed out a minute ago, it was an incentive to get them to move on. Exactly. And so even though, for a moment, assuming – and this isn't our argument, but assuming that furnish means make available, which is the phrase that the employer in the Alde case was attempting to convince the court that provide meant, assuming that in this case, that furnish simply means, in our contract, furnish simply means make available, that is a right. That is a right that they did not have before. That is a right that they were given by the district, pursuant to this contract, to get them to retire early. Now – Counsel, Judge Gould, if I could interject a question, please. So when you said, I think to Judge Burns, that it's all over on the contract, I took that to be sort of argument as, it's all over with us. But am I right? It's not all over in the state court? In other words, you don't have a ruling yet in state court that would preclude parole evidence or that would say, you're right on the contract. If we affirm here, as I understand it, you have to go back into state court, and the Miami State Court gets two distinguished advocates arguing about the meaning of the language. That is correct, Your Honor. Am I right? Okay. So what do you mean by it's all over? Well, what I mean is it's all – the issues that we're dealing with today, the appeal – plaintiffs appealed the district court's decision finding that essentially plaintiffs have no constitutional rights, or, excuse me, that their constitutional rights in relation to this contract were not violated. So those are the only issues we're dealing with today. So if this Court, if this panel affirms the motion for summary judgment, dismisses the constitutional claims, yes, the plaintiffs still have State constitutional claims in State court. Contract claims. Contract – excuse me. Contract claims in the superior court for Gila County, Arizona, and basically the Court is waiting on the – is – we've had two or three status conferences. We're waiting in advance to see what happens with this case. But, yes, that case, even if the Court affirms this decision, the State claims will go forward in State court. Does that answer your question? Yes, it does. Thank you. I was – you know, really, the Court stopped – basically what the Court did, the district court in this case did, was they interpreted the contract. And essentially they found, like I mentioned earlier, if the contract is silent as to who has to pay for premiums, then there can be no – there can be no rights, constitutionally protected rights. Plaintiffs dispute that and have pointed to Alde. Now, I was going to discuss Alde. However, and I expected to have questions on Alde. Since I – It sounds like a little bit of a different case. Very much of a different case, Your Honor. And unless there's other questions of the panel, I believe that our arguments are laid out pretty clearly in our brief. I just have one question. It may be a little beside the point. But the process by which the governing board here – is it school board that made this decision? They had a series of hearings, as I understand it, before they effected this change and required the contribution of, what, $100 per month for the health beneficiaries? Right. About 20 percent of the time. And as I understand it, there's some evidence in the record that at least one of the plaintiffs appeared at one of the hearings and argued against it to the board. Correct. So let's assume for a second that they have raised a property claim that is constitutional. What process would be required before there could be a change effected? Well, our position, Your Honor, is that that due process would be pretty minimal. What would it consist of? It would consist of being heard and allowing the district – being heard by the school board to take into consideration their position on this change in benefits. In your view, did that happen here? Yes. With respect to at least one of the plaintiffs? Our – well, my recollection is, Your Honor, that there are a couple of affidavits. And the affidavit from the school district individual indicated that she had called both of the plaintiffs, spoke directly to one of the plaintiffs and said, hey, there's going to be this hearing and we're going to talk about this. The other plaintiff, she actually spoke to the plaintiff's husband and said, be sure and tell, you know, your wife to be there, because we're going to talk about this issue. So the plaintiffs were aware – it's our position that the plaintiffs were aware of the school board hearing. There were actually two hearings where it was discussed. They actually made the decision in the second hearing. And I acknowledge, Your Honor, that there is a little bit of dispute there. We – I personally don't think there is. Our position is that there is not. It's clear the plaintiffs were aware of the school board meetings and attended or the first meeting and were able to attend the second if they wanted to. The plaintiff is claiming that's not the case, so there is some fact dispute there. But there's no – nothing in the record that shows any formal notice was given to the plaintiffs beforehand that this issue is going to be discussed, it's going to be front and center at the school board hearing, and it may affect your benefits. Your Honor, no more than what's required by Arizona law for any public meeting. And public meeting – school boards are required to provide their agendas. It's either 24 or 48 hours ahead of time. I have to admit I don't remember right now. So we went through all the regular – the statutory required ways of notifying the public of what the agenda is for the school board. And on top of that, like I mentioned, the business manager for the school district called – she called everyone that she thought was going to be affected by this, and that's in her affidavit to give them notice as well. Okay. Counsel, I've got a couple of simple questions just for purposes of clarifying my curiosity. So where is Miami Unified School District? Do you know where Globe, Arizona, is, Your Honor, by any chance? No? Not precisely, no. You know, Miami and Globe are a couple of old mining towns, and they're about halfway between Phoenix and the New Mexico border. So they're east of Phoenix. Great. Okay. All right. That answers my curiosity question. I appreciate it. Okay. Any other questions? Thank you for your consideration. If I may comment, I very much appreciated the excellent arguments on both sides of this case. I guess they know how to make lawyers in Arizona. Thank you, Your Honor. You had some rebuttal time, if I remember. If you want to. Usually you don't have to. No. And it'll be 30 seconds, Your Honor. And I appreciate the question on the due process, Your Honor. And I'm not sure this had the earmarks of what due process is. I mean, this was a noticed just board meeting where they made a decision. There was no specific, you know, some of the things of due process. Your clients didn't get any specific letter saying, look, this is going to be discussed. We know you have an interest in this. If you want the opportunity, you'll get it to speak in front of them. Nothing like that happened. Sure, Your Honor. And it also didn't have things like they couldn't cross-examine witnesses, call witnesses, all the basics with that. And, you know, I keep harping on this poor all-day decision, and I have to harp on it one more time. I mean, the all-day decision, if you look at the section where they discuss the word provide, and I know there may be a distinction in some people's minds on whether provide and furnish mean the same thing. They just say we're using basic contract principles. It's no, you know, the same we use in ERISA cases, the same we look at using and interpreting collective bargaining cases, and the same that we use in just interpreting regular contracts. And, again, it's our position that those words mean the same. And with that, I would just request that the Court reverse the district court's ruling. And, again, we appreciate your time. Thank you, Your Honor. Yes, and we wish to thank you for your fine arguments, and the matter is submitted and have a safe trip back to Arizona.
judges: Burns, Gould, Paez